IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STACY TERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-cv-727-RAH-JTA |
| | ) | (WO) |
| JOSEPH AARON DESAUTELS, Doctor, | ) | |
| BROOK SCHULTZ WATTS, Nurse | ) | |
| Practitioner, and JESSICA HOPE | ) | |
| ROLLINS, Nurse Practitioner, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court[1] is the motion to dismiss filed by Defendants Joseph Aaron Desautels and Brook Shultz Watts, which the undersigned CONSTRUES as containing a motion to dismiss for lack of subject matter jurisdiction and a motion to dismiss for failure to state a claim upon which relief can be granted. (Doc. No. 9.) Also before the court is Defendant Jessica Hope Rollins's motion to dismiss the complaint, which the undersigned CONSTRUES as containing a motion to dismiss for lack of subject matter jurisdiction and a motion to dismiss for failure to state a claim upon which relief can be granted. (Doc. No. 23.)

---

[1] Pursuant to 28 U.S.C. § 636, this action has been referred to the undersigned "for further proceedings and determination or recommendation as may be appropriate." (Doc. No. 3.)

Finally, before the court is *pro se* Plaintiff Stacy Terry's response to the motion to dismiss filed by Defendants Desautels and Watts (Doc. No. 16) and Terry's response to the motion to dismiss filed by Defendant Rollins. (Doc. No. 36). Because the responses contain Terry's requests for leave to amend the complaint to correct any deficiencies in her allegations of jurisdiction and to more fully state a claim upon which relief can be granted,[2] the court CONSTRUES the responses as each containing a motion for leave to amend the complaint.

For the reasons stated below, the motions for leave to amend the complaint (Docs. No. 16, 36) are DENIED. In addition, the undersigned recommends that (1) the motions to dismiss for lack of subject matter jurisdiction (Docs. No. 9, 23) be granted; (2) the motions to dismiss for failure to state a claim upon which relief can be granted (Docs. No. 9, 23) be denied; and (3) this action be dismissed without prejudice for lack of subject matter jurisdiction.

## I.    JURISDICTION

Terry asserts claims arising under the Fourteenth Amendment of the United States Constitution,[3] 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983. Thus, the court exercises

---

[2] (*See* Doc. No. 16 at 3, 5, 6, 9, 10, 13; Doc. No. 36 at 5–6.)

[3] Plaintiff's constitutional claim is subsumed by her § 1983 claim. *Denham v. Corizon Health*, Inc., 675 F. App'x 935, 940 (11th Cir. 2017) ("Section 1983 creates a private right of action to vindicate violations of rights, privileges, or immunities secured by the Constitution and laws of the United States." (internal citation and quotation marks omitted)).

subject matter jurisdiction over this action, if at all,[4] pursuant to 28 U.S.C. § 1331. If the court has original jurisdiction over any claims arising under federal law, then the court may[5] exercise supplemental jurisdiction over Terry's state law claims pursuant to 28 U.S.C. § 1367(a).

Venue and personal jurisdiction appear proper and are not contested.

## II.    FACTS[6]

Terry is a former patient of each Defendant. She brings federal race discrimination and state law claims arising from incidents that occurred during three separate medical appointments.[7]

---

[4] Subject matter jurisdiction is contested.

[5] "The district court's decision to either retain or reject jurisdiction over state law claims under [§] 1367(c) is 'purely discretionary' and 'not a jurisdictional matter.'" *West v. City of Albany, Ga.*, 830 F. App'x 588, 596 (11th Cir. 2020) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009)).

[6] No fact statement in this Recommendation constitutes a finding of fact by the undersigned or an endorsement of any party's factual representations. In accordance with the applicable standard of review, for purposes of this Recommendation, the undersigned assumes the truth of the well-pleaded factual allegations in Terry's complaint and construes them in the light most favorable to her. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (noting that, in ruling on a facial challenge to subject matter jurisdiction, "a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true"); *see Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012) (noting that, for purposes of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "[w]e state the facts as alleged in the Complaint, accept them as true, and construe them in the light most favorable to Plaintiffs"). Additionally, because Terry is *pro se*, the undersigned affords her an appropriate measure of leniency in construing the factual and legal allegations of the complaint, which the undersigned would not afford a trained lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[7] In addition to the allegations outlined here, Terry contends other individuals in Desautels's practice subjected her to racist comments and failed to provide adequate treatment. (*See, e.g.*, Doc.

First, on January 12, 2024, Watts, a nurse practitioner at Desautels's obstetrics and gynecology practice, "racially profiled" Terry,[8] subjected her to painful physical and sexual assault during a routine Pap smear, forcefully took a biopsy of her uterus without her informed consent, and infected her with human papilloma virus ("HPV").[9] (Doc. No. 1 at 3 ¶¶ 1–2; Doc. No. 1-2 at 3–4; Doc. No. 1-20 at 1.[10]) As a result, Terry suffered one or more infections as well as physical injuries that caused pain, itching, and heavy bleeding. (Doc. No. 1-20 at 1; Doc. No. 1-2 at 2–3.) Desautels and Watts thereafter fraudulently billed Medicare for services in relation to the medical care Watts provided on January 12, 2024. (Doc. No. 1 at 3 ¶¶ 1–2; Doc. No. 1-2 at 2–3.) Specifically, they fraudulently billed for services not rendered to make it appear Terry had an HPV infection before Watts performed the Pap smear. (Doc. No. 1 at 3 ¶¶ 1–2; Doc. No. 1-2 at 2–3.) Subsequently,

---

No. 1-2 at 1–2.) Those individuals are not named as defendants in this action. Consequently, the undersigned will not address Terry's allegations against them.

[8] Terry alleges Watts discriminated by calling her "girl" throughout the encounter, including once while patting her leg and beckoning her into the examining room. (Doc. No. 1-20 at 1.) Terry implies Watts's alleged racism motivated her failure to obtain Terry's informed consent, failure to provide Terry medical treatment within the acceptable standard of care, and decision to conduct painful medical procedures without Terry's consent and while ignoring Terry's protests of pain.

[9] Terry alleges she could not have contracted a sexually transmitted disease prior to the January 12, 2024 medical appointment because she was celibate for the previous 9 years. (Doc. No. 1-20 at 1.)

[10] Under Rule 10(c) of the Federal Rules of Civil Procedure, documents attached to the amended complaint "are part of the amended complaint for all purposes." *Garrett v. U.S. Marshals Serv.*, No. 2:17-cv-470-ECM-JTA, 2021 WL 1215873, at *3 (M.D. Ala. Mar. 10, 2021) (citing *Solis-Ramirez v. U.S. Dept. of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985)), *report and recommendation adopted sub nom. Garrett v. Williams*, No. 2:17-cv-470-ECM, 2022 WL 422161 (M.D. Ala. Feb. 11, 2022).

Desautels and Watts were dismissive of Terry's complaints regarding the incident. (Doc. No. 1 at 3 ¶¶ 1–2; Doc. No. 1-2 at 2–3.)

Second, on July 11, 2024, Terry sought treatment from her primary care provider, Rollins, a nurse practitioner. (Doc. No. 1 at 4 ¶ 3; Doc. No. 1-21 at 5–7.) During this encounter, Terry reported "she believed she was infected with something during her January 12, 2024[] [P]ap smear." (Doc. No. 1 at 4 ¶ 3.) Rollins did not believe her, did not test for an infection, and refused to refer her to a different OB-GYN for care. (*Id*.) Despite Terry's lack of any history of mental illness, Rollins diagnosed Terry with new, unstable paranoia.[11] (Doc. No. 1 at 4 ¶ 3; Doc. No. 1-21 at 6.) Later, Rollins fraudulently billed Medicare for services in relation to the medical care she provided on July 11, 2024. (Doc. No. 1 at 4 ¶ 3.)

---

[11] Additionally, Terry alleges Rollins "insinuated 'active hallucinations in the office . . . , but in [Rollins's] opinion, [she] had a concern that [Terry's] interpretation of the encounter as reported to [Rollins] by [Terry] is altered.'" (Doc. No. 1 at 4 (quotation marks cleaned up).) Terry uses quotation marks in conjunction with this allegation and is clearly quoting Rollins's medical record of the encounter, which Terry attached as an exhibit to her complaint. (Doc. No. 1-21.) In the medical record, Rollins diagnosed Terry with paranoia and stated "*[n]o* active hallucinations in office but in my medical opinion, I have a concern that [Terry's] interpretation of her encounter as reported to me by her is altered." (*Id*. at 6 (emphasis added).) Where the characterization of Rollins's remarks as reflected in the exhibits attached to Terry's complaint conflicts with the factual allegations in the body of the complaint, the contents of the exhibit are controlling. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."); *Anderson v. Kendall*, No. 2:23-CV-204-MHT-JTA, 2024 WL 1223542, at *1 (M.D. Ala. Feb. 28, 2024) ("Where [the plaintiff] has attached documentary evidence to his petition, the material in the attached evidence controls wherever it conflicts with the statements in the petition."), *report and recommendation adopted*, No. 2:23CV204-MHT, 2024 WL 1223448 (M.D. Ala. Mar. 21, 2024). Accordingly, for purposes of this Recommendation, the undersigned presumes Rollins did not insinuate Terry was actively hallucinating in the medical office.

Third, on September 26, 2024, Desautels "berate[d], intimidate[d], and terrorize[d] [Terry] in an examination room" at his practice because of her allegations against Watts. (Doc. No. 1 at 3 ¶ 2; Doc. No. 1-2 at 4–5.) He refused to conduct a test to determine what infection(s) Watts caused. (Doc. No. 1 at 3 ¶ 2; Doc. No. 1-2 at 4–5.) Nor did he disclose to Terry her "HPV 'High Risk'" diagnosis.[12] (Doc. No. 1-20 at 1; Doc. No. 1-2 at 4–5.) Terry was terrified throughout the incident and began to panic. (Doc. No. 1-2 at 5.) When she stood up and began to leave, Desautels followed closely behind. (*Id*.) When she reached her car, she began to cry. (*Id*.)

## III.    PROCEDURAL HISTORY

On November 13, 2024, Terry filed her complaint. (Doc. No. 1.) She asserts claims against all Defendants for unauthorized use of her personal information in violation of 18 U.S.C.A. § 1028A.[13] In addition, she asserts claims of "racial profil[ing]"[14] allegedly in

---

[12] Terry submitted Medicare billing records in support of her allegation that Desautels and Watts diagnosed her with "HPV 'High Risk.'" (Doc. No. 1-20 at 1; Doc. No. 1-2 at 4–5.) The Medicare billing records Terry submitted indicate she was not tested for HPV prior to the January 12, 2024 incident. (Docs. No. 1-7 through 1-15.) After January 12, 2024, Desautels's practice billed Medicare for tests and screenings for "HPV, high risk types" and other infections. (*Id*.) The Medicare billing records do not state a diagnosis. (*Id*.)

[13] Terry's complaint contains an express demand for compensatory damages for "unauthorized use of the plaintiff personal information to filed fictitious Medicare claims for services not rendered." (Doc. No. 1 at 4 (sic).) In a response brief, while expressly recognizing "this action is civil, not criminal," Terry clarifies that she seeks to enforce § 1028A, which criminalizes aggravated identity theft in certain scenarios. (Doc. No. 16 at 14 ¶¶ D.–E.)

[14] Terry plainly alleges she experienced race discrimination while receiving medical care at medical practices that receive Medicare funds. The Affordable Care Act, 42 U.S.C. § 18116(a), and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibit race-based discrimination in the provision of medical care by an entity receiving federal funds. The undersigned will not

6

violation of 42 U.S.C. § 1983.[15] (*Id*. at 1, 3.) She also asserts state common law and medical malpractice claims that may[16] include claims for failure to obtain informed consent, negligence, wantonness, trespass to the person, assault, sexual assault, battery, defamation, invasion of privacy, intentional infliction of emotional distress, and the tort of outrage. (Doc. No. 1.)[17]

---

construe Terry's complaint as containing a Title VI or Affordable Care Act claim because Terry does not purport to assert any such claims and because any such claim against Defendants, who are individuals, would be futile. *See* 42 U.S.C. § 18116(a) (providing that, with respect to Affordable Care Act claims for race discrimination, "[t]he enforcement mechanisms provided for and available under . . . [T]itle VI . . . shall apply for purposes of violations of this subsection"); *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1169 (11th Cir. 2003) (noting "individuals may not be held liable for violations of Title VI because it prohibits discrimination only by recipients of federal funding"); *see also Campbell v. Air Jamaica Ltd*., 760 F.3d 1165, 1168–1169 (11th Cir. 2014) (noting the lenience afforded the construction of *pro se* pleadings "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading").

[15] Terry's complaint does not clearly specify which Defendants are subject to her § 1983 claim. For purposes of this Recommendation, the undersigned presumes she asserts her § 1983 claim against all Defendants.

[16] The complaint does not clearly identify each of Terry's state law claims or delineate which state law claims Terry asserts against which Defendants. Because the court has no jurisdiction over the state law claims, it is not necessary here to precisely and accurately name all of Terry's state law claims or parse out which Defendants are subject to which state law claims. The undersigned makes no determination whether Terry's state law claims are cognizable under Alabama medical malpractice law. Neither does the undersigned make any determination whether the factual allegations in the complaint are sufficient to support any state law claim, including any of the potential state law causes of action listed here.

[17] In her response briefs, Terry also alleges Defendants violated the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104–191, 110 Stat. 1936 (1996), which contains provisions regarding the confidentiality of medical records. (Doc. No. 16 at 3 (alleging Desautels and Watts violated HIPAA)); Doc. No. 36 at 3 (alleging Rollins violated HIPAA).) Assuming Terry has sufficiently alleged a HIPAA claim, such a claim is not proper against these Defendants because "there is no private right of action for a violation of HIPAA's confidentiality provisions." *Bradley v. Pfizer, Inc*., 440 F. App'x 805, 809 (11th Cir. 2011).

On December 13, 2024, Defendants Desautels and Watts filed a motion to dismiss, arguing the court lacks subject matter jurisdiction over Terry's federal claims and Terry failed to state federal or state claims upon which relief can be granted. (Doc. No. 9.) On January 14, 2025, Terry filed a response,[18] and, on January 17, 2025, Desautels and Watts timely filed a reply. (Docs. No. 16, 17.)

On January 11, 2025, Terry filed a motion for default judgment against Rollins, who had not yet appeared in the action. (Doc. No. 9.)

Subsequently, on January 25, 2025, Rollins appeared in the action and filed a motion to dismiss Terry's complaint. (Doc. No. 23.) On January 28, 2025, the court ordered Terry to show cause in writing, on or before February 19, 2025, why Rollins's motion to dismiss should not be granted. (Doc. No. 25.) The court directed Rollins to file a reply not later than February 26, 2025. (*Id*.) On January 31, 2025, Terry timely moved for an extension of time to respond to the January 28, 2025 order to show cause, stating Rollins had not timely served her with a copy of the motion to dismiss. (Doc. No. 26.) Rollins responded to Terry's motion on February 3, 2025, contending she had properly served Terry with the motion to dismiss. (Doc. No. 27.) On February 12, 2025, the court granted Terry's motion for extension of time, cautioned all parties regarding "their obligation to maintain civility with one another," and reminded counsel to ensure certificates of service accurately reflect perfection of service on a *pro se* litigant by conventional means (rather than by electronic

---

[18] Terry's response was untimely. By order entered December 17, 2024, her brief was due not later than January 7, 2025. (Doc. No. 11.) The undersigned overlooks the lateness of the submission because doing so does not prejudice Defendants.

filing). (Doc. No. 32 at 2.) In accordance with the February 12, 2025 order, Terry timely filed her response brief on February, 26, 2025. (Doc. No. 36.) On March 5, 2025, Rollins timely filed her reply. (Doc. No. 39.)

On February 7, 2025, the court ordered Rollins to show cause in writing, on or before February 21, 2025, why Terry's motion for default judgment should not be granted. (Doc. No. 30.) The court directed Terry to file a reply not later than February 28, 2025. (*Id*.) Rollins timely filed her response to the February 7, 2025 order to show cause, and Terry timely filed a reply. (Docs. No. 34, 37.)

On February 19, 2025, Rollins filed a motion seeking permission to augment her briefing with additional evidence consisting of an audio recording of her complaints to a Baptist Hospital Primary Care Partner Assistant Manager and an online review she posted regarding one or more Defendants. (Doc. No. 35.) On March 5, 2025, the court denied the motion on grounds that neither the recording nor the online review could properly be considered in conjunction with the pending motions to dismiss or motion for default judgment. (Doc. No. 38.)

The motions to dismiss are under submission and ready for disposition.[19]

## IV.    STANDARD OF REVIEW

Subject matter jurisdiction is the power of the court to hear a class of cases, which is conferred by statute. *Arbaugh v. Y & H Corp*., 546 U.S. 500, 503, 513 (2006). "[S]ubject-

---

[19] By separate Recommendation entered this date, the undersigned addresses the motion for default judgment.

matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016) (citation omitted). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514.

Motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) bring either "facial attacks"[20] or "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).

> Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. *Id*. at 1529. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. *Id*. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits. *Id*.

*Morrison v. Amway Corp*., 323 F.3d 920, 925 n.5 (11th Cir. 2003).

Because *pro se* plaintiffs are not trained attorneys, the court affords liberal construction to the jurisdictional allegations of their pleadings. *See GJR Inv's., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education." (citations omitted)), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Liberal construction has its limits, though, and this court may not rewrite an

---

[20] This case involves a facial attack on subject matter jurisdiction.

otherwise deficient motion in order to create jurisdiction." *In re Davis*, 237 B.R. 177, 181 (M.D. Ala. 1999); *see also GJR Inv's.*, 132 F.3d at 1369 ("[E]ven in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading . . . to sustain an action. (citations omitted)).

If allegations of jurisdiction are found to be defective, they generally "may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. "However, . . . the court is not required to allow an opportunity to amend to cure a jurisdictional defect in the pleadings where the amendment would be futile." *Raley v. United States*, No. 2:23-cv-552-RAH-JTA, 2024 WL 2982038, at *3 (M.D. Ala. June 13, 2024) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)), *report and recommendation adopted*, No. 2:23-cv-552-RAH, 2024 WL 3852140 (M.D. Ala. Aug. 16, 2024); *Crooked Creek Props., Inc. v. Ensley*, 660 F. App'x 719, 721 (11th Cir. 2016) (noting that, while defective allegations of jurisdiction may be amended pursuant to § 1653, courts may deny a motion to amend jurisdictional allegations on the basis of futility, undue delay, bad faith, undue prejudice to the opposing party, etc.).

## V.    DISCUSSION

A.    Terry Does Not Assert a Cause of Action for Medicare Fraud

In an apparent abundance of caution, Defendants argue Terry cannot bring a *qui tam* action under 31 U.S.C. § 3730 for Medicare fraud based on Defendants' allegedly fraudulent billing. As they correctly point out, Terry does not allege she met the necessary procedural requirements under § 3730, and, in any event, a *pro se* plaintiff cannot bring a

*qui tam* action. (Doc. No. 9 at 6; Doc. No. 24 at 5–6.) *See* 31 U.S.C. § 3730 (setting forth procedural requirements for private parties filing *qui tam* actions, including requirements for notification of the United States Attorney General); *Timson v. Sampson*, 518 F.3d 870, 873–74 (11th Cir. 2008) (holding that, absent express statutory authorization to do so, a *pro se* plaintiff cannot pursue a *qui tam* action).

Though the complaint mentions fraudulent Medicare billing, Terry does not appear to assert a *qui tam* action for Medicare billing fraud. Generously construing the complaint in Terry's favor, she uses the alleged false Medicare billing to support her assertion that Defendants Desautels and Watts used false billing practices to cover up their alleged misdeeds, and that Defendant Rollins defamed her and invaded her privacy by "publiciz[ing] she was '[u]nstable,' 'paranoid,' [and] 'hallucinating,' knowing[] the statement was not true."[21] (Doc. No. 1 at 3 ¶¶ 1–2; Doc. No 1 at 4.) Furthermore, in response to Defendants' motions, Terry clarifies "it was never her intention to file a claim seeking recovery on her Medicare claims pursuant to 31 U.S.C. § 3730." (Doc. No. 16 at 13 (cleaned up).)

Because Terry does not bring a *qui tam* action for Medicare fraud, the court takes no action with respect to such a claim.

---

[21] Terry also relies on the allegedly fraudulent medical billing to seek damages for aggravated identity theft, which will be addressed in Section V.B. of this Recommendation.

B.    Terry's Claim for Aggravated Identity Theft is Due to Be Dismissed Without Prejudice for Lack of Jurisdiction[22]

In her complaint, Terry seeks relief for Defendants' alleged unauthorized use of her personal information to file "fictitious Medicare claims for services not rendered." (Doc. No. 1 at 4 (sic).) Terry since clarified that she seeks to recover under § 1028A(a)(1), which criminalizes aggravated identity theft in certain scenarios. (Doc. No. 16 at 14 ¶¶ D.–E.) As a general rule, criminal statutes do not create private causes of action. *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1303 (11th Cir. 2008) (rejecting notion that Congress authorized "a federal private right of action any time a civil plaintiff invokes a federal criminal statute"); *Dailey v. Dunn*, No. 2:21-cv-157-WHA-JTA, 2021 WL 11247410, at *2 (M.D. Ala. Feb. 25, 2021) (noting criminal statutes do not generally create private rights of action). Terry presents no legal authority suggesting § 1028A(a)(1) is any exception to that rule. Accordingly, the undersigned concludes § 1028(A) provides Terry no private right of action. *Riga v. Benezette*, No. 612-cv-414-ORL-19-DAB, 2012 WL 12910269, at *3 (M.D. Fla. July 12, 2012) ("Nothing in [§] 1028A expressly creates a private right of action, nor has Congress implied that a private right of action exists.").

---

[22] Defendants do not address Terry's § 1028A claim. Nevertheless, "a district court may *sua sponte* consider subject matter jurisdiction at any stage in the litigation and must dismiss a complaint if it concludes that subject matter jurisdiction is lacking." *Jackson v. Farmers Ins. Grp./Fire Ins. Exch.*, 391 F. App'x 854, 856 (11th Cir. 2010); *see also Hatfield v. Cadence Bank*, No. 3:23-cv-202-RAH-JTA, 2023 WL 8707424, at *1 (M.D. Ala. Aug. 24, 2023) ("Despite Plaintiff's failure to brief the motion, the undersigned considers the merits of the motion . . . because it concerns the court's subject matter jurisdiction, which cannot be waived and must be considered *sua sponte* if necessary."), *report and recommendation adopted*, No. 3:23-cv-202-RAH, 2023 WL 8704713 (M.D. Ala. Dec. 15, 2023).

"The question whether a federal statute creates a claim for relief is not," in itself, "jurisdictional." *Nw. Airlines, Inc. v. Cnty. of Kent, Mich*., 510 U.S. 355, 365 (1994). However, as is often seen particularly in *pro se* cases, a plaintiff lacks standing[23] to enforce criminal statutes by recovering damages under those statutes, using a civil action as a vehicle to prosecute criminal charges or obtain relief in the form of criminal penalties, or invoking the power of the court to enjoin the relevant authorities to instigate criminal investigations or charges. *Riga*, 2012 WL 12910269, at *4 ("Plaintiff lacks standing to assert a claim under [§ 1028A] as a private citizen."); *see also*, *e.g.*, *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another . . . . The District Court was therefore correct in dismissing the action for want of standing."); *Williams v. Univ. of Alabama Hosp. at Birmingham*, 353 F. App'x 397, 398 (11th Cir. 2009) ("Williams complains that the Hospital committed federal offenses of assault and bribery, but she lacks standing to bring these charges . . . . The government, not private citizens, prosecutes crimes."); *Williams v. St. Vincent Hosp*., 258 F. App'x 293, 295 (11th Cir. 2007) ("Williams has no standing to invoke [18 U.S.C.] § 1113 because it is a criminal statute that makes it a federal crime to

_____

[23] Where a plaintiff lacks a legally cognizable interest in the outcome of a case, Article III standing, which is jurisdictional, is implicated. *See United States v. Texas*, 599 U.S. 670, 673 (2023) (discussing a citizen's lack of a judicially cognizable interest in the criminal prosecution of another in the context of Article III (jurisdictional) standing); *Morales v. U.S. Dist. Ct. for S. Dist. of Fla*., 580 F. App'x 881, 887 (11th Cir. 2014) ("[A] private citizen's interest in the U.S. Attorney's criminal prosecution of another person is not a judicially cognizable interest for standing purposes."); *Murdock v. Birmingham Jefferson Cnty. Transit Auth*., No. 2:18-cv-00808-KOB, 2020 WL 3470172, at *2 (N.D. Ala. June 25, 2020) ("To have standing supporting jurisdiction, a litigant must have a judicially cognizable interest and stake in the outcome of the case.").

attempt to commit murder or manslaughter within the United States."); *Minton-Crumity v.*

*Tyson*, No. 4:20-cv-69-MW/MJF, 2020 WL 3900366, at *4 (N.D. Fla. June 8, 2020)

("Plaintiffs generally do not have standing to initiate a lawsuit to enforce criminal

statutes."), *report and recommendation adopted sub nom. Minton-Crumity v. Nancy Lou*

*Tyson & Michelle Hodges*, No. 4:20-cv-69-MW/MJF, 2020 WL 3895777 (N.D. Fla. July

9, 2020).

Consequently, Terry's § 1028A claims seeking damages for unauthorized use of her

personal information are due to be dismissed without prejudice for lack of jurisdiction.

Further, because Terry lacks standing to bring an action under § 1028A, no amendment

could cure the jurisdictional deficiency in her § 1028A claims. Thus, amendment is futile.

*Riga*, 2012 WL 12910269, at *4.

C.     Terry's § 1983 Claim is Due to Be Dismissed for Lack of Subject Matter Jurisdiction

"The essential elements of a 42 U.S.C. § 1983[24] claim are: (1) the violation of a

constitutional right or federal statute; (2) by a person acting under color of state law."

*Wright v. Alvarez*, 797 F. App'x 455, 456 (11th Cir. 2019). Defendants argue they are not

---

[24] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit
> in equity, or other proper proceeding for redress, except that in any action brought
> against a judicial officer for an act or omission taken in such officer's judicial
> capacity, injunctive relief shall not be granted unless a declaratory decree was
> violated or declaratory relief was unavailable.

15

state actors and Terry makes no allegation they acted under color of state law. Therefore, Defendants reason, because Terry fails to adequately plead the two essential elements of a § 1983 claim, her complaint fails to state a § 1983 claim upon which relief can be granted. Further, because Terry asserts no valid federal cause of action, Defendants contend the court lacks federal question jurisdiction over this case.

Defendants' argument ventures into the hazy ground between failure to state a federal claim upon which relief can be granted, on the one hand, and, on the other, failure to state a federal claim that supports the exercise of subject matter jurisdiction.[25] *See Archer v. Am's First Fed. Credit Union*, No. CV 24-00481-TFM-B, 2025 WL 945603, at *4 (S.D. Ala. Feb. 21, 2025) ("In determining whether federal question jurisdiction exists under 28 U.S.C. § 1331, courts must 'respect the important distinction between the lack of subject matter jurisdiction and the failure to state a claim upon which relief can be granted." (quoting *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1351–52 (11th Cir. 1998))). "The test ordinarily applied for determining whether a claim arises under federal

---

[25] The distinction is material because differing standards of review apply. *Simanonok v. Simanonok*, 787 F.2d 1517, 1520 (11th Cir. 1986) (explaining the distinctions between the two types of analyses (citing *Bell v. Hood*, 327 U.S. 678 (1946))). Dismissal for lack of subject matter jurisdiction is not a ruling on the merits, whereas dismissal for failure to state a claim upon which relief can be granted may constitute a merits-based decision. *See id*. Unlike jurisdictional dismissals, decisions on the merits warrant dismissal with prejudice. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1169 (11th Cir. 2014) ("'Dismissal with prejudice for failure to state a claim is a decision on the merits and essentially ends the plaintiff's lawsuit, whereas a dismissal on jurisdictional grounds alone is not on the merits and permits the plaintiff to pursue his claim in the same or in another forum.'" (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977))); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (in which the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." *Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1034 (11th Cir. 2022). "A federal court may dismiss a claim invoking federal question jurisdiction under 28 U.S.C. § 1331 for lack of subject matter jurisdiction only if the claim 'is not colorable, *i.e.*, if it is "immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous."'" *Id.* (quoting *Arbaugh*, 546 U.S. at 513 n.10 (quoting in turn *Bell v. Hood*, 327 U.S. 678, 682–83 (1946))). "[T]he category of claims that are 'wholly insubstantial and frivolous' is exceedingly narrow." *Id.* 1034. For jurisdiction to be found lacking, the "plaintiff's federal claim must have 'no plausible foundation, or [ ] the court [must] conclude[ ] that a prior Supreme Court decision clearly forecloses the claim.'" *Id.* at 1035 (quoting *Barnett v. Bailey*, 956 F.2d 1036, 1041 (11th Cir. 1992)). Additionally, in light of the generous construction afforded *pro se* pleadings, the court "should be even more reluctant to dismiss a case for lack of federal question jurisdiction where the plaintiff . . . is proceeding *pro se*." *Simanonok*, 787 F.2d at 1520; *see also Archer*, 2025 WL 945603, at *4.

The fact that a claim may ultimately lack merit does not mean it cannot confer federal question jurisdiction. *Sanders*, 138 F.3d at 1351–52. On the other hand, merely citing a federal statute, without more, is insufficient for establishing jurisdiction. *O'Neal v. Allstate Indem. Ins. Co. Inc.*, No. 20-14712, 2021 WL 4852222, at *3 (11th Cir. Oct. 19, 2021) ("[M]ere reference to federal law is insufficient to establish subject matter jurisdiction—' the implicated federal issue must be *substantial*.'" (quoting *Dunlap v. G&L*

*Holding Grp., Inc.*, 381 F.3d 1285, 1291–92 (11th Cir. 2004) (emphasis in *Dunlap*)). When, upon inspection, the plaintiff's complaint "distill[s]" solely into state law claims, federal question jurisdiction is lacking, despite the "[p]laintiff's adornment of [the] complaint with references to the Constitution and federal statutes." *Id.*

Here, despite Terry's citations to federal law in her complaint, her claims and factual allegations distill down to state law claims.[26] Her complaint contains no colorable allegation Defendants acted under color of state law or violated a constitutional right or federal statute, nor does it contain any facts from which such allegations could be generously construed or inferred. In other words, despite the federal-law labels on her claims, Terry pleads no facts that could plausibly support either of the two essential elements of her § 1983 claim. *See Moorer v. Trump*, No. 3:21-cv-872-MCR-HTC, 2021 WL 4138702, at *2 (N.D. Fla. July 16, 2021) ("The general rule governing pleading federal

---

[26] Terry brings state law claims mislabeled as federal causes of action. Hence, the situation here is different from one where the plaintiff truly asserts a § 1983 cause of action but merely fails to plead the elements of the claim. Consequently, this case does not require the undersigned to resolve the murkier question of when a plaintiff's mere failure or inability to allege facts necessary to establish an element of a § 1983 claim deprives a court of federal question subject matter jurisdiction. *See Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981) ("Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case."); *see generally* 13D Wright & Miller's Federal Practice & Procedure Jurisdiction & Related Matters § 3564 (2025) (discussing the historical basis for jurisdictional dismissal of frivolous federal claims and observing that "[t]he notion that a dismissal for lack of substantiality is 'jurisdictional' has been questioned by many. Indeed, the younger Justice Harlan characterized the concept as 'a maxim more ancient than analytically sound.'" (quoting *Rosado v. Wyman*, 397 U.S. 397, 404 (1970)).

jurisdiction requires more than a simple allegation that jurisdiction exists or citation of a federal statute. Rather, it is required that the complaint clearly set out the basic facts necessary to support the conclusion that there is federal jurisdiction."), *report and recommendation adopted*, 2021 WL 4134669 (N.D. Fla. Sept. 9, 2021). Nor do Terry's response briefs contain any indication that, with an opportunity to amend, she could adequately allege the facts necessary to plausibly satisfy elements of a § 1983 claim.

Accordingly, Terry's § 1983 claim is due to be dismissed without prejudice for lack of subject matter jurisdiction. *See O'Neal*, 2021 WL 4852222, at *3 (holding that, where the *pro se* plaintiff asserted in his complaint that his claims arose under federal law, including § 1983, but the factual allegations distilled down to claims sounding squarely in state law, the district court correctly dismissed the complaint for "fail[ure] to allege a substantial, nonfrivolous federal claim that would implicate the court's federal question jurisdiction"); *Johnson v. Am. Med Ass'n*, No. 21-CV-21886, 2021 WL 2138044, at *2 (S.D. Fla. May 26, 2021) (dismissing a § 1983 claim without prejudice for lack of jurisdiction where "the Complaint fail[ed] to allege a single factual allegation in support of Plaintiff's purported § 1983 claim"). Further, because no conceivable amendment could cure the jurisdictional defect in Terry's § 1983 claim, she is not entitled to an opportunity to amend prior to dismissal.

D.    Terry's State Law Claims Are Due to Be Dismissed Without Prejudice For Lack of Subject Matter Jurisdiction

Terry's remaining common law and medical malpractice claims arise under Alabama state law. *See* Ala. Code 1975 § 6-5-542 (defining the standard of care in medical malpractice actions and providing that the standard of care "applies to all actions for injuries or damages or wrongful death whether in contract or tort and whether based on intentional or unintentional conduct"); *Ex parte Vanderwall*, 201 So. 3d 525, 540 (Ala. 2015) (holding state law tort claims stemming from "sexual misconduct by a health-care provider toward a patient" fall outside the Alabama Medical Liability Act ("AMLA"), Ala. Code 1975 § 6-5-540 through -552, because sexual assault "is not medical treatment, and it does not result in a 'medical injury' as such an injury is understood under the AMLA"); *Collins v. Ashurst*, 821 So. 2d 173, 176 (Ala. 2001), *as modified on denial of reh'g* (Nov. 30, 2001) (holding that, under the AMLA, "more than one type of action for medical malpractice may be brought," including claims for assault, battery, and trespass to the person). The court does not have original jurisdiction over those claims.[27]

---

[27] The court lacks diversity jurisdiction over Terry's state law claims. Diversity jurisdiction exists in civil actions filed between the citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332. Terry alleges "[t]he amount in controversy is $20,000.00." (Doc. No. 1 at 2; *see also* Doc. No. 1 at 4 (Terry's demand for relief stating: "Plaintiff Stacy Terry asks this court to hold the Defendants accountable for their actions in the amount of $20,000.00" for their alleged wrongful acts).) Consequently, this case does not satisfy the minimum amount in controversy required for the exercise of diversity jurisdiction. Furthermore, according to the rule of "complete diversity," no plaintiff may share the same state citizenship with any defendant. *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir. 2002). In this action, the parties are not completely diverse because they are all Alabama citizens. (*See* Doc. No. 1 at 1.)

Pursuant to 28 U.S.C. § 1367, only if a district court has original jurisdiction over claims arising under federal law may the court exercise jurisdiction over state law claims over which the court lacks original jurisdiction. 28 U.S.C. § 1367(a). Because Terry's federal law claims are subject to dismissal for lack of subject matter jurisdiction, § 1367 affords this court no basis for jurisdiction over Terry's state law claims. 28 U.S.C. § 1367(a) (providing for supplemental jurisdiction only over state law claims that are part of the same "case or controversy" as an action over which the court has original jurisdiction); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (observing that, for supplemental jurisdiction to exist, "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court").

Consequently, Terry's state law claims are due to be dismissed without prejudice for lack of jurisdiction.

E.     The Motions to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted are Due to Be Denied

Defendants seek a ruling on the merits that Terry fails to state a claim upon which relief can be granted. (Doc. No. 9, 23.) Because the court lacks jurisdiction to rule on the merits of Terry's claims, the motions to dismiss for failure to state a claim upon which relief can be granted are due to be denied. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("'[W]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function

remaining to the court is that of announcing the fact and dismissing the cause.'" (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

F.    **The Motions for Leave to Amend the Complaint Are Due to Be Denied**

As explained above, no amendment could cure the jurisdictional defects in the complaint, and the court lacks jurisdiction over the action. Under the circumstances, Terry's motion to amend is due to be denied. *Univ. of S. Ala.*, 168 F.3d at 410; *Crooked Creek Props., Inc. v. Ensley*, 660 F. App'x at 721; *Raley v. United States*, No. 2:23-cv-552-RAH-JTA, 2024 WL 2982038, at *3 (M.D. Ala. June 13, 2024) ("[T]he court is not required to allow an opportunity to amend to cure a jurisdictional defect in the pleadings where the amendment would be futile."), *report and recommendation adopted*, No. 2:23-cv-552-RAH, 2024 WL 3852140 (M.D. Ala. Aug. 16, 2024) (citing *Foman*, 371 U.S. at 182).

## VI.    CONCLUSION

Accordingly, it is ORDERED that the motions for leave to amend the complaint (Docs. No. 16, 36) are DENIED.

Further, it is the RECOMMENDATION OF THE MAGISTRATE JUDGE that

1.    The motion to dismiss for lack of jurisdiction filed by Defendants Joseph Aaron Desautels and Brook Shultz Watts (Doc. No. 9) be GRANTED.

2.    The motion to dismiss for failure to state a claim upon which relief can be granted filed by Defendants Joseph Aaron Desautels and Brook Shultz Watts (Doc. No. 9) be DENIED.

3.     The motion to dismiss for lack of jurisdiction filed by Defendant Jessica Hope Rollins (Doc. No. 23) be GRANTED.

4.     The motion to dismiss for failure to state a claim upon which relief can be granted filed by Defendant Jessica Hope Rollins (Doc. No. 23) be DENIED.

5.     This action be dismissed without prejudice for lack of subject matter jurisdiction.

Further, it is ORDERED that the parties shall file any objections to this Recommendation on or before **August 8, 2025**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Plaintiff is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner*, 661 F.2d 1206.

DONE this 24th day of July, 2025.


_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE